First case is the matter of Svazerman et al. versus Westport Insurance. Ready? Are you ready? Ask the wrong side. Good morning, Your Honors. Good morning. I'm Jeffrey Blumstein for Appellants. Your Honor, if I could, I would appreciate the opportunity to reserve two minutes for rebuttal. Sure, sure. Thank you. May it please the Court. This is a case, first question has to be asked, what more could the appellants have done in this case? They clearly advised the insurance company, who was their insurance company, that they were going to merge with another firm effective October 1, 2007. They wanted complete prior coverage for that firm. They did not want any retro... The issue may be prior to what? I'm sorry? The issue may be prior to what or prior to when? Prior to the effective date of the merger, which was October 1, 2007, when the firm and Mr. Gladstone would be added to the continuing firm's claims-made policy, which was already in effect as of it had been renewed in July of 2007 for the following year. Mr. Gladstone and his firm would not be added until October 1, 2007. There was a request that he be added. There was an advisement that it was intended that because they wanted complete coverage, that as of that date he would not be renewing or he would terminate his existing policy with Zurich. Help me understand something. Sure. There's a line above the signature line, which was signed, which states that all other terms, and this, I guess, goes to specifically define the scope and the range of the new firm coverage. It specifically says all other provisions of the contract shall remain in force. And I assume that means that the provisions of the policy, the terms that spell out the terms of coverage and periods of coverage, are not changed by anything else in the policy. Are you with me there? I understand, and I'd like to answer that. As I understand that, the application is dated July 23, 2007. At that point, it's an application. You have an existing policy. What's being applied for and it's being on tap as being offered by Westport is a couple of different things. One, you can have prior firm coverage. Right. And no one has seen what that will entail at that point. There's no – there was no prior firm coverage endorsement on the policy at that point. What there was was retroactive dates for people who joined the firms as individuals. And it said that as of – we only covered – The biggest issue is retroactive to what? The prior firm endorsement specifically. I understand your argument that the extent of this tension between language of the prior firm endorsement and any language above the signature line and the – I'll call it the integrated act clause. That's not what the district court called it. That that creates an ambiguity and has to be interpreted in your client's favor and against the insured. But it seems that – getting past that question. If you are right, then what happens is a conscious decision that Mr. Gladstone made not to ask Zurich to cover him for a claim that he knew was sitting out there at the time. He thought it was meritless, therefore he did not submit the claim to Zurich. Informed Westport that, well, I had this prior claim. I didn't tell Zurich about it because it was meritless. It would then shift the coverage for the claim that Zurich contractually would have been obligated to cover. Had Gladstone informed Zurich of it, shift it to Westport. That's the effect of your argument, if you will. You're arguing that's the natural result of the terms of the policy. And I'm trying to understand why that is or why there's an ambiguity as to that result. Can I interpose a question into that? Sure. Which is, did anything – any of the correspondence, communications use the word unlimited? No. Okay. There are some e-mails with the broker after that. Which say unlimited? It says, am I covered? Do I have complete coverage? I believe it's there. And they say, yes, congratulations, you've got it. Yeah, but complete is not helpful because you'd agree that it's only complete coverage within the terms of the policy with Westport. As amended by the request and endorsement. When he signed that application, the application's a form. It has several different options offered by Westport. One of which could have been checked off was that there is no – there's a retroactive date for Mr. Gladstone. Therefore, and the retroactive date would have been perhaps October 1st, 2007, or it could have been an earlier date, that any claims made in later years which refer back to occurrences or malpractice or claims of malpractice that occurred prior to that date, we don't cover, even though the claim is made during our policy term. That was one of the options. But didn't they say that in the – in that the way they defined any claim that is presented will be combined with any other claim? So there are multiple claims. In other words, it's the multiple claims clause that I referred to. Didn't the multiple claims clause specifically say that? That if you have a claim that arises from or is related to a prior claim, the date of that current claim will be defined by us as relating back to the date of the first claim. Or if there's more than one claim, the date of the claim you might have now relates back to the date of the first claim at the time they first could have brought the claim. Again, there were several options. We chose what was on TAP, which was prior firm coverage, which was a request. But the endorsement, and getting back to Chief Judge McKee's question, the endorsement itself says subject to all other terms and conditions of this policy. Yes, which are not. You're saying none of those terms and conditions apply? No. Ones that do not limit are not in conflict with the complete coverage given in the prior firm endorsement, which is not limited in any way and which could have been limited by the insurer. As I've pointed out in the first American case, they're in the business of this. My firm is not. They could have said, okay, we want to make sure that this is clear. We know what your expectations are, or at least we should know. What we're going to do is say, here's an endorsement saying, yes, you have prior firm coverage, but it does not cover any claim that comes in, which relates back in any way to any case mentioned in your application, and attach a copy of the application. That's what was done in first American. The insurance company is not helpless here. They know what is wanted. They know they have all the information. They are the experts. They can limit the policy. They can also make it clearer as to that they're not covering this. They can also make it clearer than the language. Well, they're going to say they did make it clear by defining, by requiring that the coverage only apply to claims first made against any insured during the policy period, then defining claims. They're going to say that that did make it clear. Well, then I would move my second point, Your Honor, which is that, as we've said, there has to be some showing that there's, under I think an objective test, that not only, as this Court I think said in the Colliers v. Lloyd case, there's really a two-part test in terms of knowledge. One is a subjective test. Is there some notice, actual or subjective, that there may be some claim out there? The second thing is, is there, under an objective test, is there a reasonable expectation that that event will ripen into an actual claim or lawsuit during the coverage period? And on that – Reasonable expectation on the part of whom? I'm sorry? The insured or the insurer? Reasonable expectation on the part of whom? I think it goes to the reasonable expectation of the insured, and that is one of the key maxims in New Jersey law is you look at – No, I think we all agree on that, but given how they define wrongful act, why would it be a reasonable expectation? Oh, because if you compare both the Blymeyer and Wilson responses to the collection action in 2006 and 2007 with the complaint that was filed in 2009, the Wilson answer says services were unprofessional. Well, does that mean Mr. Gladstone was rude? He was late? There's no facts. The district court relied specifically on the Blymeyer counterclaim, and that's an actual claim. Well, no, the Blymeyer counterclaim is even worse because it says, perform services in an incompetent and negligent manner. In New Jersey, I mean, that was clearly and was stated in the application. That was just a throwaway to try to get a settlement that the claim would be dropped by Mr. Gladstone for money, and it was about four days after the application with a prejudice stipulation from Mr. Blymeyer. That claim was no longer there before the policy even started, and that's in the file, in the record, Your Honor. I can give you the page if you need it. You just called it a claim, and I know you didn't do it in terms of a technical definition, but you just said that claim was no longer there. Now, in New Jersey, to have a claim for malpractice I know, you have to have an affidavit. For the claim to ripen, you have to do certain things. You have to state the facts that make it. You have to have an affidavit of merit. Here, if you look at Blymeyer, only states his incompetent language of merit. I'm talking about a complicated land use case that eventually went up to the Appellate Division of the Supreme Court. There were, in the case, there was a constitutional challenge to the ordinance, there was an as-applied challenge, and there was procedural challenges. When you get to the actual claim filed by Mr. Wilson with an attorney in May of 2009, it's very specific. Mr. Gladstone allegedly failed to retain a hydrogeologist and a real estate appraiser to effect the as-applied claim. The as-applied claim dealt with each individual plaintiff differently. But Mr. Gladstone acknowledged that as a claim under this policy by saying he had the prior claim, he didn't report it because it was meritless. Well, what he didn't report was Mr. Wilson's statement that you were negligent without any affidavit of merit, without even being represented by counsel as you should have. He didn't report the Blymeyer claim either, did he? I'm sorry? He didn't report the Blymeyer claim either. No, and that was a conscious decision not to because he thought it was frivolous and sometimes attorneys do say that.  And if Mr. Blymeyer had come back later and made a claim, I'd have a much tougher argument before your honors because of that statement. But that statement related to Mr. Blymeyer, who was an attorney, by the way, who made that. What happened to the Wilson case? The one below or the one? The one that brings us here today. It was settled while summary judgment motions were pending. How much money are we talking about in this case? I have to, at this point, ask for Westport's permission. Never mind. He doesn't trust me. I don't want to make you disclose any confidences. Well, actually, I do have consent from Mr. Wilson's attorney to tell the court if this came up. Even though Westport is not a signatory to that agreement, they were aware of it, and I wouldn't give specifics without Westport's attorney's consent. But if your honor wants it, I would give it. They're deciding. All right. What happened? It was settled for a sum of money, but it was subject. There was no personal liability for Mr. Gladstone. It was subject to this lawsuit. Your honor, with that, my time is almost up, and I may come back later. Thank you very much for your time. Thank you. Good morning, your honor. Good morning. I please the court counsel, Robert Arnold, counsel for Westport Insurance Corporation. It's a pleasure to be here this morning. Your honor, it's my pleasure. I didn't say that yet. You just started. I'm feeling pleasant, your honor. It's really my goal this morning to try and be as concise as possible and to allow plenty of time to respond to any questions or concerns the court may have. It's also my goal, though, to avoid falling into a syndrome that I sometimes fall into, and that is to simplify something that's complicated. I'm sorry, your honor.  I don't want to overly simplify something that's complicated, but I also don't want to overly complicate something that is really relatively straightforward. You want to be just right. We'll do it. I want to hit it right down the middle, Judge, pardon the golf analogy. And I respectfully submit Mr. Blumstein's well-argued points, notwithstanding, that this case really involves a fairly straightforward application of familiar policy provisions under a number of cases that have applied and interpreted those policy provisions. This is a fairly straightforward application of the way the interrelated wrongful acts provisions and claims first made policy coverages work. And I think that's how Judge Sheridan saw it, that despite the sort of surface complexity, the issues were really quite straightforward, and that's why we're here urging that this court affirm that decision. Mr. Blumstein accurately summarized the facts. I'm not going to revisit them, but I just want to make a couple of points. It's fundamental in any insurance case in New Jersey, and I think it's a universal rule, that a court in applying and interpreting a policy needs to read the policy as a whole and not look at provisions in isolation, need to read the policy as a whole. What didn't he discuss or raise, or what should we read? I mean, when you're saying that, there's obviously something you want us to focus on. Here's the thing. If you take away one theme from my comments this morning, Your Honor, I'd like it to be this, that when Mr. Gladstone joined the Zafirman firm, and that was done by this prior firm endorsement, from the date that endorsement took effect, from the moment it took effect, he had the same coverage as every other lawyer in the Zafirman firm. No more and no less. And the position that is being put forth in this appeal would be to give Mr. Gladstone more coverage than the other lawyers in that firm would have. Well, that's what he was worried about, isn't it? I mean, wasn't it exactly the fact that he knew these – was it hopeful, or am I making that up? No, that's correct, Your Honor. Okay, good. He knew that these were out there, and that's why he wanted this extra insurance. Isn't that right? He wanted coverage for his prior professional services, prior representations, prior occurrences, which had not yet manifested or resulted in a claim. Well, in his insurance application, he described the Hopewell fee conflict and informed Westport that he was about to cancel his prior insurance. Doesn't that indicate that he was relying on the Westport insurance? I don't think so. To cover any future claims? I don't think so, Your Honor. I think what that indicates, as Judge McKee pointed out in his questions earlier, he had made a conscious decision not to report the initial Blymeyer claim to his then-insurer, Zurich. He decided to bear the risk of that claim. He thought they were frivolous. I'm sorry? He thought they were frivolous, he said. Yes, he did. That's what he says, and I accept that as accurate, Your Honor. But he acknowledged that it was a claim. And when he made the decision, which was entirely his prerogative to make, not to report that claim to Zurich, when one does that, one does that at his or her own peril. He didn't tell Zurich about what he acknowledged was a claim. We now know that the subsequent claim made by Mr. Wilson related back, pursuant to the unambiguous provisions of the Westport policy, related back to that claim. Had he reported it to Zurich, the later claim would have related back to the Blymeyer claim, which he freely chose not to report to Zurich. But the terms and conditions of the Westport policy still apply. It is still a policy that covers only claims first made during the period of that policy. And under the interrelated wrongful acts provision, related acts arising out of the same services, the same wrongful acts or series of wrongful acts, relate back to the date on which the first such claim was made. So his decision not to advise Zurich of that claim was his decision. But it doesn't create coverage that's inconsistent with the terms and conditions of the Westport policy. It simply doesn't. You look like you're about to ask me a question, Judge. Well, there's one percolating around up there, but I can't articulate it. So go ahead. I have a question. Well, Chief Judge McKee. Go right ahead. Thank you, Your Honor. In GI Holdings, we said New Jersey courts construe contracts of insurance to reflect the reasonable expectations of the insured in the face of ambiguous language and phrasing and in exceptional circumstances, even when the literal meaning of the policy is plain. Isn't this a case of exceptional circumstances where Gladstone was reasonably expecting to be? He discloses this. There's no carve-out in that endorsement that says, well, we're not going to provide coverage with respect to that Hopewell Township matter. What was unreasonable about his expectation of coverage with respect to any claim arising out of that? Well, I think you put your finger on the concept, Your Honor. His expectations have to be reasonable. And I think the district court found, and we certainly think he was correct to find, that expectations of coverage for a claim which had already been made, which related to a claim which had already been made, and for which he had consciously decided not to advise the insurer on the risk at that time, at the time that first claim was made, could not have been reasonable. But the insurance company could have come with that kind of carve-out. Once the insurance company had noticed that this prior problem was lingering out there, the company could have easily come with an endorsement that says we specifically, we will not cover under our interrelated clause anything related to that prior action. I guess the question, Your Honor, is why would the company need to do that where they have a prior interrelated acts clause in the policy which goes precisely to that scenario? I understand that. But it would certainly have clarified the scope and the reach of that interrelated act clause. And again, Your Honor, I would submit to you that there's no need to clarify the scope of that clause. It's never been found ambiguous by any court. We've pointed to a number of cases from this court, from the appellate courts in New Jersey, and from around the country where interrelated wrongful acts clauses have been deemed unambiguous and have been found to apply in circumstances very, very much like this one. If not, circumstances where the relationship between the two claims were even more attenuated than what we have here. But Mr. Gladstone and his new firm were trying to get complete coverage, and they disclosed this. And why wouldn't it be unreasonable for them to expect if it's going to be not covered, they'll tell us at the outset? They disclosed it. Mr. Gladstone disclosed it and said he hadn't sought coverage for it from his prior insurer. All the prior firm endorsement does is make Mr. Gladstone uninsured like every other attorney in the Zafirman firm. I don't believe he could have reasonably expected to have more coverage than any other assured under that policy could have had. Why is the question asked on the application? I'm sorry? Why are you asking a question on the application about any prior actions? Because I can only theorize, but in general terms, Your Honor, if something comes out of that application, such as a threatened claim or a circumstance which may in the future lead to a claim, the company can analyze that, analyze the risk. It may factor into premium. It may result in a specific provision or an exclusion. It just goes to the overall underwriting analysis that an insurer makes. But it is not, and in fact, it is specifically not. If you tell us about it, you're covered for it, no questions asked. In fact, the application specifically says this is not a substitute for notice. So it goes to the underwriting process, but it doesn't negate or override or trump the provisions of the policy, which include, again, the requirement that the policy only applies to claims first made in the policy period and the definition of claim, which includes the concept of relating back under the interrelated wrongful acts clause. Your Honor, you noted the GI Holdings case. We cited that case in our papers as one of, I think, a number of examples where courts have looked at these policies and found them unambiguous. There is, again, no authority to the contrary. I realize that it's the appellant's position that the prior firm endorsement makes this case different from those other cases. I respectfully submit that it doesn't. I know that the court, in preparing for this, has looked at the language of that endorsement. It's very short. It's very sweet. It simply says that Mr. Gladstone is added to the coverage provided under the policy to the Zafirman firm. As Your Honor noted, Judge McKee, all other terms and conditions remain unchanged. That's the reasonable way to approach this kind of a situation. And I go back to the point I started with, is that Mr. Gladstone and his firm could not have reasonably expected that that short endorsement, which expressly says it does not alter the terms and conditions of the policy, could have given him more coverage, different coverage, broader coverage, more expansive coverage than the rest of the firm had. If there are no more questions for me, Your Honors, I'll conclude. Thank you very much. Did we ruin your day? You're so happy to be here? I'm doing fine. Thanks, Judge. You don't know if you're doing fine yet. You'll find out down the road in due course, as they say. Very briefly, Your Honors. Sure. First of all, it's untrue to say that Mr. Gladstone is being treated the same as was to be treated the same as any other attorney. I believe we have a list of about 12 attorneys who joined our firm. All of them have specific retroactive dates in their policies, and therefore, for them, clearly any claims that arise during the coverage period after they join our firm, if they arose based on events that took place before the retroactive date, it's not covered. Why wouldn't that be the same as the definition of the policy period here? We can call it the definition of the policy period or call it the retroactive date, but it's the date at which coverage begins and during which coverage is contractually obligated. Right. But there is no – it's specifically retroactive, as it says. In New Jersey, there are – and it's in recognizing one of the federal cases, citing Sparks – when you issue a claims policy, it's retroactive by nature. You should not – it's against public policy to unduly limit the retroactive nature of that coverage for prior bad acts. I think this does by not making it clear what is covered and is not covered. And also, one final thing, this is a case where Mr. Gladstone, before he joined our firm, handled a substantial land use matter. He had 15 or 16 separate clients. He should have known that based upon this one frivolous statement of neglect in a counterclaim to a collection action, that he was losing coverage, according to Westport. If any of those other substantial parties he represented in that case that was lost, challenging the Hopewell Ordinance, if they had filed lawsuits against him during the claim period, that would have, according to Westport, related back to the first claim period. No, it wouldn't have, because in those other – certainly the Wilson and the Blimery matters, where what was asserted in the counterclaim fits within the definition of the unrelated wrongful act, because you have the assertion of negligence in malpractice. You don't have that in the other actions as far as I know. Well, what I'm saying is that there were people he didn't sue for fee. He had a broader category of clients he represented in those lawsuits. He didn't sue them. But he did sue Mr. Wilson. He did sue him. But what Westport – Was there a malpractice claim now against the lawyer who represented Mr. Gladstone for allowing that case to be discontinued without a final release against Wilson? Not that I know of, Your Honor. I was wondering about that, too. I mean, and that's where they say there's a gap. I say there's a trap, and there shouldn't be a trap under these circumstances when you specifically make the request. You're honest. You're forefright. The insurance company has some obligation, as they can, to clarify the matter, because then what he could have done when he wrote back to Zurich and said, okay, I've got new coverage. I'm canceling as of October 1st. They still wrote back to him and said, okay, but we'll give you an ERP policy if you want it. He still could have clarified that and could have covered himself if he was told specifically by Westport, no, we're carving out this entire big lawsuit and any claims that come in under it from coverage. And they didn't do that, and that's why we believe reasonable expectations should be satisfied. Thank you, Your Honor. Thank you very much. Both sides were very helpful, very well-presented arguments. Thank you very much.